## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CUSTOM POULTRY PROCESSING, LLC,

      *Plaintiff,*

  vs.

KEVIN J. BURLIN, Individually and as
Trustee, JANELLE A. BURLIN, Individually
and as Trustee, DIVERSIFIED
PACKAGING, LLC, KJB ENTERPRISES
INC., SHARON M. ABBIATTI, and GREG
P. ABBIATTI,

      *Defendants.*

Case No. 15-1120-EFM

## MEMORANDUM AND ORDER

Plaintiff Custom Poultry Processing, LLC ("CPP") brings suit against six defendants asserting claims for successor liability, fraudulent transfer, breach of fiduciary duty, and civil conspiracy. These claims arise out of CPP's bankruptcy proceeding in the Northern District of Iowa. CPP obtained a default judgment for $1,033,992.57 against Diversified Packaging, Inc. ("DP One") in an adversary proceeding. CPP now contends in this lawsuit that six defendants are jointly and severally liable for the amount of the default judgment. There are several motions before the Court. CPP seeks summary judgment on certain elements of its claims against Defendants (Doc. 70). Defendants also seek summary judgment on all claims asserted against them (Docs. 73, 75). Finally, Defendants have filed a Motion to Limit the testimony from CPP's

expert witness (Doc. 77).  For the reasons stated in detail below, the Court denies CPP's motion, grants in part and denies in part Defendants' summary judgment motions, and grants Defendants' motion to limit testimony.

## I.    Factual and Procedural Background

Plaintiff CPP is a limited liability company organized and existing pursuant to the laws of Iowa.  CPP is now a debtor in possession of a bankruptcy case, which will be explained in more detail below.  Defendants Kevin J. Burlin and Janelle A. Burlin are married and residents of Stilwell, Kansas. Defendants Sharon M. Abbiatti and Greg P. Abbiatti are married and residents of Lockwood, Missouri.  Defendant Diversified Packaging, LLC ("DP Two") was a limited liability company organized in Kansas.  It is now dissolved.  Defendant KJB Enterprises, Inc. ("KJB") is a corporation organized in Kansas.

DP One was a closely held corporation formed in 2007 and originally owned by the Burlins.[1]  Mr. and Mrs. Burlin were each 50 percent shareholders.  DP One was a supplier of packaging equipment and other supplies used in the poultry processing industry.  Mr. Burlin has over twenty-six years of experience in the packaging industry and is a certified packaging specialist.  Mr. Abbiatti was familiar with DP One because Mr. Burlin was a vendor for two of the businesses for which Mr. Abbiatti previously worked.  Mr. Abbiatti owns his own consulting business called Snack-ers LLC ("Snack-ers"), which was organized in Missouri in September 2009. Snack-ers did some business for DP One.  Between April 2011 and January 2012, DP One

---

[1] The parties refer to a DP One and DP Two. The Complaint did not specify between DP One or DP Two. DP Two was the active entity when this case was filed, and DP One had been dissolved.   DP Two was dissolved after this lawsuit was filed.  There are few allegations in the parties' facts relating to DP Two.

paid Snack-ers $10,000 for transportation and consulting services.  Mr. Abbiatti personally received $1,500 from DP One for services provided by Snack-ers.

On or about May 1, 2010, Mrs. Abbiatti became a 50 percent shareholder of DP One, and the Burlins each became 25 percent shareholders of DP One.  At the time Mrs. Abbiatti became a shareholder, she made an initial capital contribution of $5,000.  She later made an additional investment of $15,000.  After becoming a shareholder, Mrs. Abbiatti served as a director of DP One, as well as the corporation's secretary.  For the purposes of becoming a DP One shareholder, Mrs. Abbiatti used her maiden name.  Thus, she was identified on DP One's corporate documents as Sharon Eggerman.  The Abbiattis testified that the reason Mrs. Abbiatti used her maiden name was because they did not want other packaging companies to avoid doing business with Mr. Abbiatti's business because of Mrs. Abbiatti's ownership interest in DP One.  Mrs. Abbiatti's involvement in DP One was not disclosed to CPP and did not appear in public filings prior to CPP's bankruptcy.

CPP was formed in 2009 for the business purpose of processing antibiotic free and organic poultry.  Its members included Duane Bushman, Stacy Bushman, and Greg DeWeese.  In early 2009, CPP informed Mr. Abbiatti that it was starting a chicken processing business in Charles City, Iowa and that it was interested in hiring Mr. Abbiatti to help with the prospective business.  CPP hired Mr. Abbiatti in June 2009 as the general manager of operations.  As general manager, Mr. Abbiatti was in charge of CPP's facility, which included signing checks, marketing, and negotiating contracts.

Mr. Abbiatti suggested that CPP hire DP One to provide packaging and materials.  In April of 2010, Duane Bushman and Mr. DeWeese gave Mr. Burlin a tour of the Charles City chicken plant and discussed CPP's prospective business operations and production goals.  In

early June 2010, DP One entered into a written Business Service and Supply Agreement ("Supply Agreement") with CPP in which DP One agreed to provide packaging equipment to CPP, and CPP agreed to exclusively purchase all of its products from DP One. Under the same agreement, given the amount of supplies necessary to service CPP's operation, DP One also agreed to provide local warehousing for CPP's dry storage supplies one block from CPP's Charles City plant.   CPP was scheduled to begin processing chickens in September 2010. Construction delays, however, delayed actual operations. Actual operations began with processing chickens in November and slaughtering chickens in December 2010.

In October 2010, CPP ordered two Cryovac shrink tunnels and made a 50% down payment on the $64,082.50 purchase price.  Mr. DeWeese asked Mr. Burlin if DP One would write a check to CPP for the full purchase price in order to reimburse CPP on its down payment and pay the remaining balance due to Cryovac.  In exchange for payment, CPP agreed to lease the shrink tunnels back from DP One pursuant to a written lease agreement.  DP One made a payment to CPP in the amount of $64,082.50 and entered into the lease agreement on October 6, 2010.  Between October 22, 2010 and January 20, 2011, CPP made thirteen payments to DP One for a total of $736,891.07 on account of actual goods and services provided to CPP by DP One.

On January 20, 2011, three creditors, including DP One, filed an involuntary chapter 7 bankruptcy petition for CPP as debtor in the United States Bankruptcy Court for the Northern District of Iowa ("Main Bankruptcy Action").  The petition indicated that CPP owed DP One $555,801.36.  On February 1, 2011, the judge for the Main Bankruptcy Action converted it to a chapter 11 voluntary case.  On March 1, 2011, CPP filed in the Main Bankruptcy Action its statement of financial affairs and listed that it paid $796,800.46 to DP One within ninety days before the bankruptcy.  DP One knew of the potential preference debt in March 2011.  In the

bankruptcy schedule, CPP also stated that DP One repossessed equipment in breach of contract. On May 2, 2011, CPP filed in the Main Bankruptcy Action a Debtor's Report on Potential Avoidance Actions and listed a debt against DP One in the amount of $796,800.46.

On January 17, 2013, CPP filed a separate action for judgment against DP One in the bankruptcy court in the Northern District of Iowa. It was docketed as an adversary complaint. CPP alleged that it was entitled to repayment of a series of preferential transfers made to DP One and that DP One breached a lease agreement with CPP involving a piece of equipment used by CPP. DP One answered the adversary complaint on March 4, 2013, denying liability. On July 9, 2013, DP One filed an amendment to dissolve itself with the Secretary of State in Kansas.[2] On July 23, 2013, DP One's attorneys withdrew from representing DP One in the adversary action. CPP was notified of DP One's dissolution on or about December 19, 2013. On December 5, 2014, the bankruptcy court entered default judgment against DP One in favor of CPP for $1,033,992.57. No payments have been made on the judgment.

As of March 18, 2011, DP One's balance sheet showed total shareholder's equity of $1,172,450.89.[3] On or about March 29, 2011, DP One issued dividends to its three shareholders, Mr. and Mrs. Burlin and Mrs. Abbiatti, in the amount of $131,162 with 50% of such amount

---

[2] Defendants contend that this date is the date of DP One's insolvency. CPP disagrees. CPP contends that DP One was insolvent no later than March 2011. CPP provides an expert report which states that, after making adjustments to certain items on the balance sheet, DP One was insolvent from a balance sheet perspective in March 2011. The insolvency date is an important one. Although Defendants challenge CPP's expert opinion, as will be explained below, it does not challenge at this time CPP's expert opinion that DP One should have been considered insolvent in March 2011. Instead, it challenges other items in the expert report. DP One, however, still contends that its insolvency date is July 9, 2013. Thus, the date of DP One's insolvency is a disputed fact.

[3] CPP does not disagree that the balance sheet shows this figure. As noted above, and will be described in more detail below, CPP contends that it is not a true representation of shareholder equity. CPP contends, through its expert opinion, that DP One was balance sheet insolvent in March 2011 after making adjustments to the balance sheet.

payable to Mrs. Abbiatti and 25% payable to Mr. and Mrs. Burlin.  Thus, Mrs. Abbiatti received $65,581.00 and Mr. and Mrs. Burlin received $32,790.50 each.

KJB was formed on June 19, 2012 by Mr. and Mrs. Burlin.  KJB does business as KJB Packaging Solutions.  Both DP One and KJB provide packaging services.  On April 9, 2013, DP One filed its annual report with the Kansas Secretary of State in which it stated that it had only issued one share of capital stock and that it owned more than 50% of KJB.  Mr. Burlin claims that this statement was made in error.  Prior to KJB being formed, DP One had SurePoint Medical as a customer.  KJB later had SurePoint Medical as a customer.

As noted above, DP One filed an amendment to dissolve itself with the Secretary of State in Kansas on July 9, 2013.  An attorney drafted an Asset Purchase Agreement on July 30, 2013, between DP One and DP Two.  In this agreement, DP One transferred its only remaining assets to DP Two for $2,000.  Mrs. Abbiatti paid DP Two $2,500 of her own funds so that DP Two could afford to purchase DP One's naming rights.  On August 2, 2013, DP Two was formed. The business generated little to no business income.  On July 21, 2015, it was dissolved.

On April 15, 2015, CPP filed this action.  CPP asserts numerous claims.  First, it asserts four types of fraudulent transfer claims under the Kansas Fraudulent Transfer Act.  It also asserts successor liability, breach of a fiduciary duty, and conspiracy or aiding and abetting claims.  CPP seeks damages in the amount of $1,033,993 (the amount of its default judgment against DP One) and also requests punitive damages.  All Defendants now seek summary judgment.  CPP requests partial summary judgment on several of its claims.  Defendants have also filed a motion to limit CPP's expert's testimony.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5]   The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6]   If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8]   The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[10]   Each party retains the burden of establishing the lack of a genuine

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

issue of material fact and entitlement to judgment as a matter of law.[11]   Each motion will be considered separately.[12]   To the extent the cross-motions overlap, however, the court may address the legal arguments together.[13]   Finally, summary judgment is not a "disfavored procedural shortcut," but is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' "[14]

## III.   Analysis

### A.  Plaintiff CPP's Motion for Partial Summary Judgment

CPP seeks partial summary judgment on its successor liability, fraudulent transfer, and breach of fiduciary duty claims.   It also seeks summary judgment on Defendants' affirmative defenses.  With regard to the successor liability and fraudulent transfer claims,[15] CPP cites to law with little to no analysis as to how the facts in this particular case relate.   In addition, CPP often relies on facts that are appropriately controverted by Defendants.   Thus, CPP fails to direct the Court to evidence or analysis establishing that it is entitled to partial summary judgment on its successor liability or fraudulent transfer claims.

With regard to CPP's breach of fiduciary duty claim, it claims that it has standing to bring this claim against the officers and directors of DP One.   CPP's arguments are hard to decipher as they again cite to several legal principles with little to no analysis as to how the facts

---

[11] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[12] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[13] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] The Court will discuss CPP's successor liability theory in more detail below when addressing Defendant KJB's motion for summary judgment on this claim.

in this case relate to that law.  Defendants attempted to decipher CPP's arguments, but CPP states in its reply that Defendants' representation of its arguments is not accurate.  It appears as though CPP is attempting to assert a breach of fiduciary duty claim on behalf of itself *and on behalf of DP One* against Mr. and Mrs. Burlin and Mrs. Abbiatti.

Generally, an action for a breach of fiduciary duty claim against an officer or director of a corporation is one that is brought derivatively on behalf of the injured corporation.[16]  Direct actions by shareholders "are generally reserved for injuries affecting the individual legal rights of that shareholder."[17]  "Shareholders do not have standing to sue for harms to the corporation or even for the derivative harm to themselves that might arise from a tort or other wrong to the corporation."[18]  CPP recognizes this law.  CPP argues, however, that two exceptions exist to the general rule.

The first exception CPP attempts to rely upon is the "close corporation" exception.  In some instances, Kansas allows a direct action for a breach of fiduciary duty against close corporations.[19]  CPP notes three factors that Kansas considers important when determining whether a direct action will be allowed.[20]  CPP, however, fails to recognize a key component. These suits are brought by *shareholders* of the close corporation and not creditors.[21]  Indeed, the Kansas Court of Appeals, in *Richards v. Bryan*, noted that it was a minority shareholder suit and

---

[16] *See Lightner v. Lightner*, 46 Kan. App. 2d. 540, 547, 266 P.3d 539, 545 (2011).

[17] *Id.*

[18] *Id.*

[19] *Id.* at 548, 266 P.3d at 552.

[20] *Id.* (noting these three factors: "the action will not unfairly expose the corporation to a multiplicity of actions, materially prejudice the interests of the corporation, or interfere with the fair distribution of the recovery among all interested persons.").

[21] *Id.*; *Richards v. Bryan*, 19 Kan. App. 2d 950, 965, 879 P.2d 638, 648 (1994).

explicitly stated that it was "not a debtor-creditor action."[22]  Accordingly, because CPP and DP One are in a debtor-creditor relationship and CPP is not a shareholder, this exception is not applicable to CPP.  Thus, the Court denies CPP standing on this basis.

CPP next argues that separate from the close corporation exception to derivative actions, a creditor of an insolvent corporation can bring suit against officers and directors that have committed tortious acts or caused injury particular to the creditor.  CPP does not direct the Court to any law that this "exception" then allows a direct action *on behalf* of the insolvent *corporation*.  As noted above, it appears that CPP is seeking the Court's approval to sue on behalf of the corporation, DP One.  To the extent that CPP is asking the Court to find that it has standing to sue on behalf of DP One, the Court denies CPP's motion.

Finally, with regard to CPP's motion for partial summary judgment on Defendants' affirmative defenses, CPP simply states that no factual or equitable bases for these sixteen affirmative defenses exist.  Not all of Defendants' sixteen defenses are "affirmative defenses." Nevertheless, CPP's motion is woefully inadequate as CPP simply asserts one conclusory sentence for its assertion and does not direct the Court to anything in the record to support its contention.  Accordingly, the Court denies CPP's motion in its entirety.

### B.  Defendants Greg and Sharon Abbiatti's Motion for Summary Judgment

Defendants Mr. and Mrs. Abbiatti seek summary judgment on all claims asserted against them by CPP.  CPP asserts fraudulent transfer and conspiracy claims against Mr. and Mrs. Abbiatti and a breach of fiduciary duty claim against Mrs. Abbiatti.  The Court will address each claim in turn.

---

[22] *Richards*, 19 Kan. App. 2d at 965, 879 P.2d at 648.

*Fraudulent Transfer Claims*

CPP contends that two fraudulent transfers occurred with respect to Mr. and Mrs. Abbiatti. First, it alleges that the $65,581.00 shareholder distribution to Mrs. Abbiatti on March 29, 2011 was a fraudulent transfer. Next, CPP asserts that payments in the amount of $11,500 made to Snack-ers, Mr. Abbiatti's business, constitute fraudulent transfers.

There are four provisions under the Kansas Uniform Fraudulent Transfer Act ("UFTA") by which a plaintiff can bring a claim. These are K.S.A. §§ 33-204(a)(1), 33-204(a)(2), 33-205(a), 33-205(b). CPP attempts to use all four provisions. In response to Defendants' assertion that the fraudulent transfer claims brought under §§ 33-204(a)(2), 33-205(a), and 33-205(b) are barred by the statute of limitations, CPP dismisses its claims under these provisions. Thus, there is only one provision, K.S.A. § 33-204(a)(1), for which a fraudulent transfer claim against Mr. and Mrs. Abbiatti is now at issue. This provision provides that a transfer is fraudulent if the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor."[23] Defendants contend that these claims fail as a matter of law.

*Mrs. Abbiatti*

The Court will first address the transfer alleged against Mrs. Abbiatti. She contends that the statute of limitations precludes this claim. She also argues that this shareholder distribution does not meet the requirements of a fraudulent transfer.

Pursuant to K.S.A. § 33-209(a), a claim brought under subsection K.S.A. § 33-204(a)(1) must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been

---

[23] K.S.A. § 33-204(a)(1).

discovered by the claimant."[24]   In this case, the alleged transfer, Mrs. Abbiatti's shareholder distribution, occurred on March 29, 2011.  CPP brought suit on April 15, 2015—more than four years after the transfer.  The relevant question, however, is when the transfer was or could reasonably have been discovered by CPP.

There is a dearth of law as to the statute of limitations contained in K.S.A. § 33-209 and the reasonableness of the discovery of the fraudulent transfer.  There is one case from the District of Kansas case addressing the issue.  In *Dealer Computer Servs., Inc. v. Griffith*,[25] the defendant argued that the plaintiff's claim under § 33-204 was untimely because the plaintiff had notice of the transfer at a debtor exam, which was more than a year prior to the plaintiff filing the lawsuit.[26]   The plaintiff argued that there were factual disputes concerning when it could have discovered the defendant's transfer and that it could not have discovered the transfer at the debtor exam.[27]   The court ultimately concluded that "[a] reasonable jury could conclude that plaintiff could not reasonably have discovered [the transfer]" on the date the defendant proposed and that a jury could conclude it was reasonably discovered on a different date.[28]   Thus, the court allowed the claim to proceed.

Here, the facts appear similar.  Mrs. Abbiatti contends that CPP could have reasonably discovered the alleged fraudulent transfer on or about December 19, 2013, at the very latest.  On this date, DP One's President (Mr. Burlin) informed CPP's counsel that DP One dissolved in

---

[24] K.S.A. § 33-209(a).

[25] 2012 WL 6217381 (D. Kan. Dec. 13, 2012).

[26] *Id.* at *3.

[27] *Id.*

[28] *Id.*

July 2013 and that DP One had no intention of participating in or defending the adversary proceeding that CPP had brought against DP One earlier that year.   Defendants argue that a one-year period would commence on December 19, 2013 and end on December 19, 2014.[29]   Thus, because CPP filed suit in April 2015, Defendants contend that CPP's fraudulent transfer claim under § 33-204(a)(1) is untimely.

CPP, however, contends that it did not have reason to know or inquire into the fraudulent nature of the transfers until March 2015 and that it brought suit within the next month.[30]   CPP provides an affidavit in which Greg DeWeese, president of CPP, states that he did not learn of improper transactions until after it obtained a judgment against DP One in December 2014.[31]   Mr. DeWeese also states that he did not learn until March of 2015 that Ms. Eggerman (to whom the shareholder distribution was disbursed) was also known as Mrs. Abbiatti.

Defendants take issue with Mr. DeWeese's affidavit because it does not shed light as to why it was unable to reasonably discover the transactions.   Yet, this question appears factual and goes to whether it was reasonable to not discover the transfer until March 2015.   Defendants state that Mr. Burlin's December 19, 2013 email included a 2013 balance sheet which should

---

[29] CPP sought entry of default from the clerk in January 2014 but did not file a motion for default judgment until December 2014.  The default judgment was entered in December 2014.

[30] The Court notes that CPP tries to use the adverse domination theory as set forth in *Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 891 P.2d 1110 (1995), to argue that the statute of limitations has not even begun to run.   In *Scaletty*, the Kansas Supreme Court stated that "[t]he adverse domination doctrine operates to toll the running of the statute of limitations when the directors or officers charged with wrongful conduct dominate the board of the corporation to the extent that there are no directors who have knowledge of the facts giving rise to possible liability who could have or would have induced *the corporation* to sue.   The doctrine arises due to the control of the institution by culpable officers and directors, which precludes the possibility of filing suit because these individuals cannot be expected to sue themselves or to initiate any action contrary to their own interests."  *Id.* at 350-51, 891 P.2d at 1112 (emphasis added). As noted above, CPP is not proceeding on behalf of DP One.  To the extent that CPP requests to proceed on behalf of DP One, the Court denies this request.  Accordingly, the adverse domination doctrine is inapplicable.

[31] The Court notes that had CPP discovered improper transactions in December 2014, CPP's suit would be timely as it was filed five months later.

have alerted CPP to the shareholder distributions.   Yet, this balance sheet is not included as evidence and thus it is unclear what the balance sheet demonstrated to CPP.[32]   The Court cannot conclude as a matter of law that CPP could reasonably have discovered the alleged fraudulent transfer in December 2013.   Accordingly, there are factual issues that preclude a finding that CPP's fraudulent transfer claim under § 33-204 is untimely.

Mrs. Abbiatti also argues that even if CPP's fraudulent transfer claim under K.S.A. § 33-204(a)(1) is considered timely, it fails because CPP does not identify evidence indicating the existence of badges of fraud.   "UFTA creates a right of action for any creditor against any debtor and any other person who has received property from the debtor in a fraudulent transfer. A fraudulent transfer occurs when a debtor intends to hinder, delay, or defraud a creditor, or transfers property under certain conditions to another person without receiving reasonably equivalent value in return."[33]   In determining intent under § 33-204(a)(1), K.S.A. § 33-204(b) sets out eleven nonexclusive badges of fraud. These include:

(1) The transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

---

[32] Mrs. Abbiatti also states that this email disclosed that one of its shareholders was Mrs. Abbiatti and that she was specifically mentioned.  Yet, the Court does not have this evidence.  If this evidence was in the attachment to the email, the parties have not directed the Court to that evidence.  Furthermore, the shareholder distribution occurred in 2011 and it is unclear whether it was on the 2013 balance sheet.

[33] *McCain Foods USA, Inc. v. Cent. Processors, Inc.*, 275 Kan. 1, 10, 61 P.3d 68, 75 (2002).

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)    the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11)    the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[34]

CPP attempts to show Defendants' intent by relying on the existence of eight badges of fraud. Defendants take issue with CPP's reliance on these eight factors and contend that CPP only previously alleged three badges of fraud. Thus, Defendants contend that CPP should not be allowed to assert these additional badges of fraud at this late hour. The Court does not take such a limited view of CPP's claim.

Even considering the three badges of fraud that Defendants initially briefed, there are factual questions remaining. Specifically, the parties disagree on the date of DP One's insolvency. DP One states that insolvency occurred on July 9, 2013, the date of the formal dissolution of DP One with Kansas. CPP relies on an expert opinion which opines that DP One's insolvency date was no later than March 2011. Thus, DP One's insolvency date is disputed for purposes of this motion.[35] In addition, Defendants contend that the evidence shows that CPP

---

[34] K.S.A. § 33-204(b)(1)-(11).

[35] The Court recognizes that DP One's balance sheet on March 18, 2011 indicated that DP One's assets exceeded its liabilities by a significant amount. K.S.A. § 33-202(a) states that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at fair valuation." However, CPP's expert opines that DP

cannot demonstrate that the value of the consideration received by DP One was not reasonably equivalent to the $65,581 transfer to Mrs. Abbiatti. Generally, the determination of reasonably equivalent value is a question of fact.[36] Here, the payment appears to be structured as a dividend as it was based in equal parts on the shareholders' percentages in the company. However, there are factual issues as to the value given and the circumstances surrounding the distribution. Thus, there are factual issues precluding the granting of summary judgment. Accordingly, the Court denies Mrs. Abbiatti's motion with regard to this potential fraudulent transfer under K.S.A. § 33-204(a)(1).

*Mr. Abbiatti*

CPP also contends that $11,500 in payments to Mr. Abbiatti and Snack-ers constitute fraudulent transfers. $10,000 was paid to Snack-ers, and $1,500 was paid to Mr. Abbiatti personally. Mr. Abbiatti argues that CPP cannot assert a claim for the $10,000 because Snack-ers is not a party to this lawsuit. In addition, he asserts that the payment of $1,500 to Mr. Abbiatti fails because DP One was not insolvent and DP One received reasonably equivalent value from Mr. Abbiatti.

With regard to the $10,000 paid to Snack-ers, CPP contends that this payment from DP One ultimately went to Mr. Abbiatti. Thus, it is not asserting a specific claim against Snack-ers. Instead, it is asserting that DP One paid money to Snack-ers which in turn transferred it to Mr. Abbiatti. In other words, the transfer began with DP One and ultimately ended up in Mr. Abbiatti's hands.

---

One should have reserved a significant amount of money from its accounts receivable because those receivables were from CPP and there were possible preferential transfers. Thus, CPP's expert opines that had DP One done so, DP One would not be solvent on a balance sheet basis in March 2011.

[36] *In re Expert South Tulsa*, LLC, 534 B.R. 400, 413 (10th Cir. BAP 2015).

The scope of UFTA is broad, and liability is not limited simply to direct transfers to insiders.[37]   K.S.A. §33-301(l) defines a "transfer" as "every mode, direct or *indirect* . . . of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."[38] Here, it appears that CPP is alleging an indirect transfer.  Thus, this claim may proceed.

With regard to the payments in general, as noted above, there are factual questions regarding the existence of the badges of fraud.  Because of these factual questions, summary judgment is not appropriate.  Accordingly, the Court denies Mr. Abbiatti's motion for summary judgment for claims brought under K.S.A. § 33-204(a)(1).

*Conspiracy or Aiding and Abetting*

CPP also brings a conspiracy claim against the Abbiattis.  CPP's conspiracy claim is hard to discern.   It appears as though CPP contends that the Abbiattis conspired with the Burlins (and possibly DP One or DP Two and KJB) to engage in fraudulent transfers or breach a fiduciary duty.  In Kansas, "the elements of a civil conspiracy include:  (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."[39]   Although it appears that CPP cannot direct the Court to evidence establishing numerous elements of this claim, the Court will only discuss the meeting of the minds requirement.  CPP simply presents a

---

[37] *McCain Foods*, 275 Kan. at 16, 61 P.3d at 79.

[38] K.S.A. § 33-201(l) (emphasis added); *see also McCain*, 275 Kan. at 15, 61 P.3d at 78.  In *McCain*, the Kansas Supreme Court found that there was no error in finding that a fraudulent transfer occurred when one company (not a defendant) transferred money to a bank to make payments on debts guaranteed by an insider (a defendant). *Id.* at 15-16, 61 P.3d at 78-79.

[39] *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153, 161 (1984) (quotation marks and citation omitted).

laundry list of actions allegedly taken by the Abbiattis with no analysis as to how these actions relate to each other (a meeting of the minds) or for what purpose these actions were done. Thus, the Court grants summary judgment on this claim.[40]

*Breach of Fiduciary Duty*

CPP asserts a claim against Mrs. Abbiatti alleging that she breached a fiduciary duty. Again, CPP's claim is hard to decipher but it appears that it asserts that Mrs. Abbiatti breached its fiduciary duty to CPP by breaching her duty to DP One. As noted above, CPP is *not* bringing a claim on behalf of DP One. Instead, CPP is bringing its claim as a creditor of DP One. As the Kansas Supreme Court has stated, "[a] creditor of an insolvent corporation who sues solely on his own behalf cannot maintain a personal action against directors or officers who, by negligent mismanagement of the corporation's affairs, have breached their duty to the corporation to the consequent damage or injury of its creditors."[41] Thus, the Court grants Mrs. Abbiatti's motion on the breach of fiduciary duty claim.

In sum, the Court grants in part and denies in part Defendants Mr. and Mrs. Abbiatti's Motion for Summary Judgment. The only remaining claim is the fraudulent transfer claim asserted against Mrs. Abbiatti and Mr. Abbiatti under K.S.A. § 33-204(a). All other claims fail as a matter of law.

---

[40] CPP admits that there is not a meaningful distinction between a civil conspiracy and aiding and abetting claim. Thus, the Court only addresses the conspiracy claim.

[41] *Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 284, 624 P.2d 952, 961 (1981). In CPP's motion for summary judgment, it argued that it had standing based on law that states a creditor of an insolvent corporation can bring suit against officers and directors that have committed tortious acts or caused injury particular to the creditor. *Id.* at 281, 624 P.2d at 958-59 ("[A] corporate officer or director acting on behalf of a corporation is personally liable for damages caused by his willful participation in acts of fraud or deceit to one directly injured.") CPP argues that the injury it sustained is particular to it, but CPP's injury derives from DP One's insolvency and not directly from a duty owed to CPP or intentional tort towards CPP.

### C. Defendants Kevin and Janelle Burlin, DP Two's, and KJB's Motion for Summary Judgment

Defendants Mr. and Mrs. Burlin, DP Two, and KJB seek summary judgment on all claims asserted against them by CPP.  CPP asserts fraudulent transfer and conspiracy claims against Mr. and Mrs. Burlin and DP Two, a breach of fiduciary duty claim against Mr. and Mrs. Burlin, and a successor liability claim against KJB.  The Court will address each claim in turn.

*Fraudulent Transfer Claims*

CPP contends that several fraudulent transfers occurred with respect to Mr. and Mrs. Burlin.  These include: a shareholder distribution on March 29, 2011 in the amount of $65,581 ($32,791 to Mr. Burlin and $32,791 to Mrs. Burlin); wages between April 1, 2011, and August 17, 2012, in the amount of $130,000 to Mr. Burlin; mileage reimbursement between December 31, 2011, and July 12, 2013, in the amount of $67,762.66; telephone expenses between April 12, 2011, and June 29, 2013, in the amount of $7,561 to Mr. Burlin; meals and entertainment between April 2011, and September 20, 2013, in the amount of $12,829 to Mr. Burlin.

As noted above, CPP attempts to bring its fraudulent transfer claims under four provisions of the UFTA.  In response to Defendants' assertion that the fraudulent transfer claims brought under § 33-205(b) are barred by the one-year statute of limitations, CPP dismisses transfers brought under this provision.  With regard to CPP's claims brought under § 33-204(a)(2) and § 33-205(a), CPP agrees that these claims are governed by a four-year statute of limitations, with no discovery provision, and thus the only actionable transfers are those occurring after April 15, 2011.[42]

---

[42] This concession excludes the shareholder distribution to the Burlins on March 29, 2011, of $65,581; the April 1, 2011, wage payment in amount of $10,000; the April 12, 2011, telephone payment in amount of $73.31; and the meal and entertainment payments in amount of $276.03 paid before April 15, 2011.

Certain transfers, however, remain at issue. Specifically, the Court must determine whether CPP's claim brought under § 33-204(a)(1) regarding the shareholder distribution on March 29, 2011 is timely. In addition, the Court must determine whether any factual disputes exist with regard to claims brought under §§ 33-204(a)(1), 33-204(a)(2), and 33-205(a).

The Court will first address the § 33-204(a)(1) claim. Defendants assert the same argument as the Abbiatti Defendants, that CPP could have discovered the March 29, 2011 shareholder distribution on December 29, 2013 and thus CPP's claim as to this transfer is untimely. As noted above in discussing the § 33-204(a)(1) claim with regard to Mrs. Abbiatti, the Court cannot conclude as a matter of law that CPP could reasonably have discovered the alleged fraudulent transfer in December 2013. Accordingly, there is a factual issue that precludes a finding that CPP's fraudulent transfer claim under § 33-204(a)(1) is untimely. In addition, as noted above, there are other factual issues precluding summary judgment. Two important considerations are the insolvency date and whether reasonably equivalent value was provided for the transfers. Thus, the Court denies summary judgment with regard to the fraudulent transfers brought under § 33-204(a)(1).

Defendants also seek summary judgment on CPP's fraudulent transfer claims brought under K.S.A. § 33-204(a)(2). Under this provision, a transfer is fraudulent if the debtor made the transfer

> without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that such debtor would incur, debts beyond such debtor's ability to pay as they became due.[43]

Defendants argue that CPP cannot produce any evidence that the consideration for the transfer or obligation was not for reasonably equivalent value. As noted above, there are questions of fact regarding whether reasonably equivalent value was provided for the transfers. Thus, the Court denies Defendants' motion on this aspect.

CPP also brought a fraudulent transfer claim under K.S.A. § 33-205(a). Defendants do not discuss this provision. The Court notes that this provision requires a showing of insolvency and reasonably equivalent value, and Defendants make no such effort to demonstrate that CPP cannot meet those elements. Accordingly, Defendants are not entitled to judgment as a matter of law with regard to CPP's claim brought under this provision.

*Conspiracy or Aiding and Abetting*

CPP also brings a conspiracy claim against the Burlins and DP Two. As noted above, CPP's conspiracy claim is difficult to discern. Furthermore, CPP fails to direct the Court to any evidence establishing several elements of its claim. Because CPP cannot demonstrate the existence of a factual dispute as to whether there was a meeting of the minds, the Court grants summary judgment on this claim.

*Breach of Fiduciary Duty*

CPP asserts a breach of fiduciary duty claim against Mr. and Mrs. Burlin. For the reasons stated above with regard to Mrs. Abbiatti's motion on this claim, the Court grants Mr.

---

[43] K.S.A. § 33-204(a)(2)(A)-(B).

and Mrs. Burlin's motion on this claim as well.  Thus, CPP's breach of fiduciary duty claim fails

as a matter of law.

*Successor Liability*

CPP asserts a claim based on successor liability against KJB.  CPP asserts that KJB is

responsible for DP One's liabilities.

> Under Kansas law, a corporation which buys or transfers all of the assets from
> another corporation may be held liable for the debts and liabilities of the
> transferor (1) where the purchaser expressly or impliedly agrees to assume such
> debts; (2) where the transaction amounts to a consolidation or merger of the
> corporation; (3) where the purchasing corporation is merely a continuation of the
> selling corporation; or (4) where the transaction is entered into fraudulently to
> escape liability.[44]

CPP asserts that the business continuation and fraudulent transaction provisions apply.

"In order for the court to find that a company is a successor corporation, substantial continuity

must exist between the company and the selling corporation.  Substantial continuity is primarily

a question of fact and the trier of facts must look at the totality of the circumstances."[45]  With

regard to the business continuation theory, certain elements must be shown.   These include:

> (1) transfer of corporate assets (2) for less than adequate consideration (3) to
> another corporation which continued the business operation of the transferor (4)
> when both corporations had at least one common officer or director who was in
> fact instrumental in the transfer . . . and (5) the transfer rendered the transferor
> incapable of paying its creditors' claims because it was dissolved in either fact or
> law.[46]

Here, there appear to be questions of fact.  As noted above, KJB was formed in June 2012 by the

Burlins, two of the three officers of DP One.  KJB provided packaging services and so did DP

---

[44] *Equity Asset Corp. v. B/E Aerospace, Inc.*, 388 F. Supp. 2d 1305, 1308-09 (D. Kan. 2005) (citing *Comstock v. Great Lakes Distrib. Co.*, 209 Kan. 306, 310, 496 P.2d 1308, 1311 (1972)).

[45] *United States v. MPM Contractors, Inc.*, 763 F. Supp. 488, 493 (D. Kan. 1991) (citations omitted).

[46] *Stratton v. Garvey Int'l., Inc.*, 9 Kan. App. 2d 254, 266, 676 P.2d 1290, 1299 (1984).

One, albeit for different industries.  There is evidence that one customer, SurePoint, was a customer of both companies.[47]  From the evidence, it appears that SurePoint brought in a certain amount of business for either DP One or KJB.[48]  However, it is unclear to what extent and whether SurePoint's business was substantial.  In short, there are questions of fact precluding summary judgment on this claim.

In sum, the Court denies in part and grants in part Defendants' motion for summary judgment with regard to the fraudulent transfer claims, grants it with regard to the civil conspiracy and breach of fiduciary duty claims, and denies it as to the successor liability claim.

### D.  Defendants' Motion to Limit or Exclude the Expert Testimony of Alex Moglia

All Defendants seek to limit or exclude CPP's expert testimony.  CPP designated Alex Moglia, an attorney, as an expert.  Mr. Moglia serves as a bankruptcy trustee and receiver.  He provided an expert report in this case.  Defendants set forth three of Mr. Moglia's conclusions in his expert report.  They only challenge, however, two of those conclusions.

In Mr. Moglia's expert report, he reviewed DP One's balance sheet and financial statements.  He made "adjustments" to (1) write off accounts receivable, (2) reduce DP One's shareholders' equity to include a reserve for DP One's potential liability related to CPP's payment of amounts due DP One within ninety days of CPP's bankruptcy, and (3) change the timing of certain inventory write-offs. After making these adjustments, Mr. Moglia concluded

---

[47] Defendant asserts that there was overlap between both DP One and KJB servicing SurePoint Medical between June 2012 and December 2012.  The evidence does not appear to support Defendant's contention.

[48] The Court notes that DP One's annual report filed in April 2013 with the Kansas Secretary of State also stated that DP One owned more than 50% of KJB.  Mr. Burlin testified that this statement was a clerical error. However, given the above considerations, there are questions of fact as to DP One's involvement with KJB.

that DP One was balance sheet insolvent in March 2011.  Defendants state that they do not take issue with this conclusion at this time in this motion.[49]

Mr. Moglia also stated that Mr. Burlin should have known all the legal consequences associated with CPP's filing of bankruptcy and (1) shut down DP One's operations, (2) liquidate DP One, or (3) file a "Chapter 7 bankruptcy" in March 2011.  Mr. Moglia asserts that Mr. Burlin's ignorance of the law is no excuse and that Mr. Burlin breached his fiduciary duties by failing to reserve funds to pay the potential liability to CPP.  As a consequence, the March 2011 dividend was outside the ordinary course of business and not for value and the payment of wages and business expense reimbursement to Mr. Burlin after March 2011 was likewise improper.  Mr. Moglia also claims that if disinterested managers were running DP One, they would not have allowed DP One to hold such a massive receivable from CPP.  Defendants seek to exclude these conclusions.

These opinions are impermissible opinion testimony.  What an individual should have known is not an appropriate subject upon which an expert may opine.  It is a factual question left to the jury's determination.  Thus, the Court grants Defendants' motion.[50]

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 70) is **DENIED**.

---

[49] As noted above, the insolvency date of DP One is an important consideration.  Defendants do not specifically take issue with expert opinion determining that DP One should have been considered insolvent in March 2011.  Nevertheless, DP One contends that March 2011 is not its insolvency date, but rather, the insolvency date is July 2013, when DP One filed its formal dissolution with Kansas.  Thus, the insolvency date is a disputed fact as there are two competing dates.

[50] The Court also notes that Mr. Moglia's opinion that Mr. Burlin breached his fiduciary duty is one on the ultimate legal conclusion and thus improper, but it is also irrelevant as there is no remaining breach of fiduciary duty claim.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 73) is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 75) is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude (Doc. 77) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 25th day of January, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE